March 20, 2020

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
California Service Center
Laguna Niguel, CA 92677-0590



U.S. Citizenship
and Immigration
Services

HCL AMERICA INC
c/o LAURA BLACK
FRAGOMEN DEL REY BERNSEN & LOEWY
100 HIGH ST FLR 3
BOSTON, MA 02110



WAC2005951280



Form I-129, Petition for a Nonimmigrant Worker

A215-626-861

## DECISION

On December 11, 2019, your organization, HCL AMERICA INC, filed a Petition for a Nonimmigrant Worker (Form I-129), with U.S. Citizenship and Immigration Services (USCIS), seeking to classify THALACHEERU, VENKATESWARA PRASA (beneficiary) as a temporary worker in a specialty occupation (H-1B) under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (INA).

INA § 101(a)(15)(H)(i)(b) provides, in part, for the classification of a qualified nonimmigrant:

> ...who is coming temporarily to the United States to perform services...in a specialty occupation described in section 214(i)(1)..., who meets the requirements for the occupation specified in section 214(i)(2)..., and with respect to whom the Secretary of Labor determines and certifies...that the intending employer has filed with the Secretary an application under section 212(n)(1).

You seek to amend the prior petition and requested that USCIS extend the beneficiary's stay.

You stated on the Form I-129 that you are an information technology and engineering services firm with 12,858 employees. You seek to employ the beneficiary as a Programmer Analyst from December 12, 2019 to November 3, 2022.

USCIS reviewed the initial record of evidence for eligibility in accordance with the INA and Title 8, Code of Federal Regulations (8 CFR) and could not determine whether you had established eligibility for the benefit sought. Accordingly, USCIS issued a Request for Evidence (RFE) on December 20, 2019. On March 11, 2020, you submitted a response.

After careful review and consideration of the entire record, based on a preponderance of the evidence, the petition will be denied for the reasons discussed below.

### Specialty Occupation

The issue to be discussed is whether the position offered to the beneficiary qualifies as a specialty occupation.



INA § 214(i)(1) defines "specialty occupation" as follows, in relevant part:

>...the term "specialty occupation" means an occupation that requires-
>
>(A) theoretical and practical application of a body of highly specialized knowledge, and
>
>(B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

8 CFR § 214.2(h)(4)(ii) defines a specialty occupation to mean:

>...an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

Pursuant to 8 CFR § 214.2(h)(4)(iii)(A), to qualify as a specialty occupation, the position must meet one of the following criteria:

>(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
>(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
>(3) The employer normally requires a degree or its equivalent for the position; or
>
>(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.



A specialty occupation is defined as one that requires the theoretical and practical application of a body of highly specialized knowledge and the attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States. The regulations at 8 CFR § 214.2(h)(4)(iii)(A) further clarify how a position can qualify as a specialty occupation. However, it should be noted that 8 CFR § 214.2(h)(4)(iii)(A) must logically be read together with INA § 214(i)(1) and 8 CFR § 214.2(h)(4)(ii). Hence, the criteria stated in 8 CFR § 214.2(h)(4)(iii)(A) should logically be read as being necessary but not necessarily sufficient to meet the statutory and regulatory definition of specialty occupation. To otherwise interpret this section as stating the necessary and sufficient conditions for meeting the definition of specialty occupation would result in particular positions meeting a condition under 8 CFR § 214.2(h)(4)(iii)(A) but not the statutory or regulatory definition. To avoid this illogical result, 8 CFR § 214.2(h)(4)(iii)(A) must therefore be read as providing supplemental criteria that must be met in accordance with, and not as alternatives to, the statutory and regulatory definitions of specialty occupation. As such and consistent with INA § 214(i)(1) and the regulation at 8 CFR § 214.2(h)(4)(ii), USCIS consistently interprets the term "degree" in the criteria at 8 CFR § 214.2(h)(4)(iii)(A) to mean not just any bachelor's or higher degree, but one in a specific specialty that is directly related to the proffered position. Applying this standard, USCIS regularly approves H-1B petitions for qualified nonimmigrants who are to be

employed as engineers, computer scientists, certified public accountants, college professors, and other such occupations. These professions, for which petitioners have regularly been able to establish a minimum entry requirement in the United States of a bachelor's or higher degree in a specific specialty or its equivalent directly related to the duties and responsibilities of the particular position, fairly represent the types of specialty occupations that Congress contemplated when it created the H-1B visa category.

USCIS does not use a title, by itself, when determining whether a particular position qualifies as a specialty occupation. The specific duties of the proffered position, combined with the nature of your business operations are factors that USCIS considers. USCIS must examine the ultimate employment of the beneficiary and determine whether the position qualifies as a specialty occupation. The critical element is not the title of the position or an employer's self-imposed standards but whether the position actually requires the theoretical and practical application of a body of highly specialized knowledge, and the attainment of a bachelor's or higher degree in the specific specialty as the minimum for entry into the occupation, as required by the INA.

Each position is evaluated based upon the nature and complexity of the actual job duties to be performed with that specific employer. In addition, the beneficiary's obtainment of a degree in a related area does not guarantee the position is a specialty occupation. Further, performing specialty occupation duties that are incidental to the primary functions is insufficient to establish that the duties to be performed qualify as a specialty occupation. Through detailed descriptions of the beneficiary's duties, USCIS may discern the nature of the position and whether the position requires the theoretical and practical application of a body of highly specialized knowledge attained through attainment of at least a bachelor's degree or higher in a specific discipline.



Subsequent to the filing of the petition, you were requested to provide additional evidence to include a detailed description of the actual duties to be performed by the beneficiary on a day-to-day basis, and evidence to establish that the position meets the standards to qualify as a specialty occupation.

You described the duties of the proffered position as follows:

- Programmer Analyst, Development, Enhancement and Support of US Regulatory reporting system and Regional Consolidation Layer (RCL) - 20%

  Responsible for development of IHC/CCAR Regulatory Reports using Axiom Reporting Tool

- Documentation of System Requirement for US RCL (Regional Consolidation Layer) system and Axiom Controller View Regulatory Reporting system - 10%
- Analyzing and Retrieving of data from Multiple source Systems and Creating database objects like tables, views, procedures, and functions. - 15%
- Work with Data Architects, and Data Analysts to understand the data flow and data mapping for financial regulatory report development - 15%
- Perform unit, integration testing of the reports and dashboards - 10%
- Working with release management teams on the release dates to promote the code into production - 10%
- Define and track technical projects, teamwork, track Defects in UAT and Production environment on a daily basis - 5%
- Co-ordinate with team on daily basis to meet the Technical requirements, TES support, L3 support and SME in L2 support team - 5%
- Provide support and technical assistance to the users, train and assist users in generating adhoc reports; Problem resolution, issue escalation, status updates, etc. - 10%

Under each of the duties listed above, you added narrative paraphrasing each heading. However, the duties as described do not establish the depth, complexity, level of specialization, or substantive aspects of the duties for which the beneficiary would be responsible. You described the duties of the proffered position in relatively generalized and abstract terms that do not relate substantial details about either the position or its constituent duties. You did not further elaborate on the specific tasks, methodologies and applications of knowledge that would be required in furtherance of these overarching duties. This type of generalized description may be appropriate when defining the range of duties that may be performed within an occupational category, but it does not adequately convey the substantive work that the beneficiary will perform. Without a meaningful job description, the record lacks evidence sufficiently concrete and informative to demonstrate that the proffered position requires a specialty occupation's level of knowledge in a specific specialty. The duties as described do not communicate: (1) the actual work that the beneficiary would perform; (2) the complexity, uniqueness and/or specialization of the duties; or (3) the correlation between that work and a need for a particular level education of highly specialized knowledge in a specific specialty. Thus, you have not shown that the proffered position is a specialty occupation and the petition must be denied on this basis alone.

Nevertheless, USCIS will analyze the duties as described and the evidence of record to determine whether the proffered position as described would qualify as a specialty occupation. When attempting to establish whether the position is a specialty occupation, you must show that the position meets at least one of four criteria at 8 CFR § 214.2(h)(4)(iii)(A). USCIS will now discuss each criterion in turn:



1. **A bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position**

USCIS recognizes the *Occupational Outlook Handbook* (OOH), a publication of the U.S. Department of Labor (DOL), as an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses. You provided a certified Labor Condition Application (LCA) from the DOL that the proffered position is a position within the Computer Programmer occupation.

The OOH describes the duties of Computer Programmers, as follows:

> Computer programmers write and test code that allows computer applications and software programs to function properly. They turn the program designs created by software developers and engineers into instructions that a computer can follow. In addition, programmers test newly created applications and programs to ensure that they produce the expected results. If they do not work correctly, computer programmers check the code for mistakes and fix them.
>
> **Duties**
> Computer programmers typically do the following:
>
> - Write programs in a variety of computer languages, such as C++ and Java
> - Update and expand existing programs
> - Test programs for errors and fix the faulty lines of computer code
> - Create and test code in an integrated development environment (IDE)
> - Use code libraries, which are collections of independent lines of code, to simplify the writing
>
> Programmers work closely with software developers, and in some businesses their duties overlap. When such overlap occurs, programmers can do work that is typical of developers, such as designing programs. Program design entails planning the software initially, creating models and flowcharts detailing how the code is to be written, writing and debugging code, and

designing an application or systems interface.

A program's purpose determines the complexity of its computer code. For example, a weather application for a mobile device will require less programming than a social-networking application. Simpler programs can be written in less time. Complex programs, such as computer operating systems, can take a year or more to complete.

Software-as-a-service (SaaS), which consists of applications provided through the Internet, is a growing field. Although programmers typically need to rewrite their programs to work on different system platforms, such as Windows or OS X, applications created with SaaS work on all platforms. Accordingly, programmers writing SaaS applications may not have to rewrite as much code as other programmers do and can instead spend more time writing new programs.

The OOH describes the educational and other qualifications for Computer Programmers, as follows:

Most computer programmers have a bachelor's degree in computer science or a related subject; however, some employers hire workers with an associate's degree. Most programmers specialize in a few programming languages.

**Education**
Most computer programmers have a bachelor's degree; however, some employers hire workers who have other degrees or experience in specific programming languages. Most programmers get a degree in computer science or a related subject. Programmers who work in specific fields, such as healthcare or accounting, may take classes in that field to supplement their degree in computer programming. In addition, employers value experience, which many students gain through internships.

Most programmers learn a few computer languages while in school. However, a computer science degree gives students the skills needed to learn new computer languages easily. Students get hands-on experience writing code, testing programs, fixing errors, and doing many other tasks that they will perform on the job.

To keep up with changing technology, computer programmers may take continuing education classes and attend professional development seminars to learn new programming languages or about upgrades to programming languages they already know.



As stated in the OOH, the Computer Programmer occupation allows for a wide range of educational credentials, including an associate's degree to qualify. While the OOH indicates that most computer programmers obtain a degree (either a bachelor's or an associate's degree) in computer science or a related field, the OOH does not state that at least a bachelor's degree or its equivalent in a specific specialty is normally the minimum required for entry into the occupation. Further, the OOH also indicates that employers value computer programmers who have experience, which can be obtained through internships. Accordingly, the position you offered to the beneficiary does not meet this criterion.

When the OOH does not support the proposition that a proffered position is one that meets the statutory and regulatory provisions of a specialty occupation, it is your responsibility to provide probative evidence (e.g., documentation from other objective, authoritative sources) that supports a finding that the particular position qualifies as a specialty occupation

In response to the RFE, you reference that the DOL's O*Net Online website states that the Specific

Vocational Preparation (SVP) for this position is between a level 7 and a level 8. The assessment (SVP rating) is meant to indicate only the total number of years of vocational preparation required for a particular occupation. It does not describe how those years are to be divided among training, formal education, and experience. Nor does it specify the particular type of degree, if any, that a position would require. As was noted previously, USCIS interprets the term "degree" in the criteria at 8 CFR § 214.2(h)(4)(iii)(A) to mean not just any bachelor's or higher degree, but one in a specific specialty that is directly related to the proposed position. Therefore, the O*NET information is not probative of the proffered position qualifying as a specialty occupation.

Additionally, you did not submit additional relevant documentation from an authoritative career source which list the duties, work environment, education, training, skills, and other qualifications. Mere assertions of counsel without documentary support do not constitute evidence. *Matter of Obaigbena*, 19 I&N Dec. 533, 534 (BIA 1988); *Matter of Ramirez-Sanchez*, 17 I&N Dec. 503, 506 (BIA 1980); *Matter of Laureano*, 19 I&N Dec. 1, 3 (BIA 1983). USCIS must look to the plain language of the documents executed by the petitioner and not to subsequent statements of counsel. *Matter of Izummi*, 22 I&N Dec. 169 (Assoc. Comm'r, Examinations 1998).

Further, when the OOH recognizes a variety of paths to enter into the occupation, USCIS looks for evidence that demonstrates that the particular position may require a bachelor's degree in a specific discipline. Here, you provided a generalized description of the proposed duties. The record does not include information or analysis distinguishing the proposed position from a position that requires, for example, postsecondary certificates in particular programming languages. Similarly, the record lacks information and analysis demonstrating why the proffered position could only be performed by someone with a bachelor's degree in a specific specialty, or its equivalent. That is, the particular position here involves basic tasks that may require some technological knowledge of programming languages and software, platforms, and environments, but does not include sufficient probative detail to conclude that the duties require knowledge attained through bachelor's-level study in a specific discipline.



Further, upon analyzing the description of the duties that you provided, it does not appear that the duties for the proffered position are those of a Computer Programmer. Without a detailed description of the beneficiary's duties, USCIS is unable to discern the nature of the position and whether the position requires the theoretical and practical application of a body of highly specialized knowledge attained through attainment of at least a bachelor's degree or higher in a specific discipline.

As a result, the proffered position cannot be considered to have met this criterion.

2. **The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree**

USCIS will discuss this criterion in two parts as follows:

a. **Degree requirement is common to the industry in parallel positions among similar organizations**

The first alternative prong requires that you submit evidence that the degree requirement (a bachelor's degree or higher or its equivalent in a specific specialty) is common to the industry in parallel positions among similar organizations.

Factors often considered by USCIS when determining the industry standard include: whether the OOH reports that the industry requires a degree; whether the industry's professional associations have made

a degree a minimum entry requirement; or whether letters or affidavits from firms or individuals in the industry attest that such firms routinely employ and recruit only degreed individuals.

In response to the RFE, you submitted several job postings. However, the record does not contain sufficient documentary evidence indicating whether these organizations are "similar" to you in size, scope, and scale of operations, business efforts, expenditures, or any other relevant extent. Nor does the record contain any evidence regarding how representative the advertisements are of the unusual recruiting and hiring practices of the industries in which these advertisers operate. Also, some of the job announcements indicate that those employers would accept applicants with any "engineering" degree. A position that allows any "engineering" degree to qualify is not a specialty occupation because engineering encompasses numerous fields, many of which are not directly related to each other and to the proffered position. Further, the job announcements do not appear to be for parallel positions. For instance, the postings do not include sufficient information about the duties and responsibilities for the advertised positions to ascertain that they actually correspond to the proffered position. It is not possible to determine important aspects of the advertised jobs, such as the day-to-day responsibilities, complexity of the job duties, supervisory duties (if any), and independent judgment required or the amount of supervision received.

Thus, you have not shown that a requirement for a bachelor's degree or higher or its equivalent in a specific specialty is common to the industry in parallel positions among similar organizations.

In addition, you did not provide documentation that industry-related professional associations have made a bachelor's degree in a specific specialty a requirement for entry into the position. You did not submit letters or affidavits from firms or individuals in the industry that attest that such businesses routinely employ and recruit only degreed individuals. No other evidence was submitted that is sufficient to establish that the degree requirement is common to the industry in parallel positions among similar organizations.

As such, you have not shown that the degree requirement is common to the industry in parallel positions among similar organizations.

### b. Complexity and uniqueness of the proffered position

The second alternative prong allows you to show that the proffered position is so complex or unique that it can be performed only by an individual with a bachelor's degree or higher or its equivalent in a specific specialty. In reviewing this second alternative prong, USCIS looks to the Form I-129 and the documents filed in support of the petition. It is only in this manner that the agency can determine the exact position offered, the location of employment, the proffered wage, et cetera. Through detailed descriptions of the beneficiary's duties, USCIS may discern the nature of the position and whether the position requires the theoretical and practical application of a body of highly specialized knowledge attained through attainment of at least a bachelor's degree or higher or its equivalent in a specific specialty.

You submitted a breakdown of the job duties for the proffered position along with the percentage of time that the beneficiary will spend on the various duties. However, the submitted list of duties provides no further detail as to the unique or complex nature of the proffered position. This breakdown is not viewed as sufficient to establish that the proffered position is more unique or complex than other similar positions within the same industry. While this breakdown of duties does indicate that the proffered position requires a certain amount of skill, training, and attention to detail, it does not establish that the proffered position is any more complex than any other computer programmer position. Without additional evidence showing the unique or complex nature of the



position, or how this position differs from other similar positions within the same industry, you have not met this criterion.

As such, you have not shown that this position involves duties seen as either unique or complex so that only an individual with a bachelor's degree or higher in a specific specialty could perform them.

### 3. The employer normally requires a degree or its equivalent for the position

This third criterion requires that you show that you normally require a bachelor's degree or higher or its equivalent in a specific specialty for the proffered position. USCIS looks to your employment practices as well as information regarding employees who previously held the position.

To satisfy this requirement, you submitted several job announcements for the Programmer Analyst position showing a minimum educational requirement of a bachelor's degree or its equivalent or higher in Computer Science, Engineering (any), Information Technology, Computer Applications, Computer Technology, Computer Information Systems, Management Information Systems or a related field plus a varied number of years experience in the job offered, or related IT or engineering role.

The job announcements allow for a wide range of educational fields to qualify. The assertion that the duties of the proffered position can be performed by an individual with a degree in any of these disciplines indicates that the proffered position does not meet the statutory and regulatory definition of a specialty occupation.



Moreover, your job announcements indicate that the duties of the proffered position can be performed by an individual with a bachelor's degree or its equivalent or higher in Computer Science, Engineering (any), Information Technology, Computer Applications, Computer Technology, Computer Information Systems, Management Information Systems or a related field. The issue here is that the field of engineering is a broad category that covers numerous and various specialties, some of which are only related through the basic principles of science and mathematics, e.g., nuclear engineering and aerospace engineering. Thus, a general degree in engineering or one of its other subspecialties, such as chemical engineering or mechanical engineering, is not closely related to computer science. Also, any and all engineering specialties are not directly related to the duties and responsibilities of the particular position proffered in this Form I-129. Thus, the proffered position does not have a bachelor's or higher degree in a specific specialty as the normal minimum requirement for entry into the position based on your own standards. Hence, the position is not a specialty occupation.

In general, provided the specialties are closely related, e.g., chemistry and biochemistry, a minimum of a bachelor's or higher degree in more than one specialty is recognized as satisfying the "degree in the specific specialty (or its equivalent)" requirement at INA § 214(i)(1)(B). In such a case, the required "body of highly specialized knowledge" would essentially be the same. Since there must be a close correlation between the required "body of highly specialized knowledge" and the position, however, a minimum entry requirement of a degree in seemingly disparate fields, such as any engineering field would not meet the statutory requirement that the degree be "in the specific specialty (or its equivalent)," unless you establish how each field is directly related to the duties and responsibilities of the particular position such that the required body of highly specialized knowledge is essentially an amalgamation of these different specialties. Here, you never explained how degrees in any engineering field or computer science are directly related to each other and to the duties of the proffered position.

In this case, although you assert that you normally require a bachelor's degree for the proffered position, your reasoning is problematic when viewed in light of the statutory definition of specialty